UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PRESCOTT ARCHITECTS, INC. and
JEFFREY PRESCOTT

                                                  CASE NO.  3:08cv532\MCR\EMT

      Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY,

      Defendant.
_____/

**PRESCOTT'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO STAY ARBITRATION**

Pursuant to the Court's March 19, 2009, Order, plaintiffs Prescott Architects, Inc. and Jeffrey Prescott file this supplemental brief in support of their motion to stay arbitration.

**Introduction**

For the most part, the factual background of this case has been previously briefed and there is general consensus among the parties concerning the background. However, in light of the Court's request for further briefing on the subjects below, it is necessary to expound upon the role and status of Lexington Insurance Company with respect to its role as insurer for Prescott Architects, Inc. and Jeffrey Prescott.

Lexington Insurance Company operates in the State of Florida without a Certificate of Authority from the Office of Insurance Regulation. Generally, a Certificate of Authority is required for an insurer to conduct business in this state. See Fla. Stat. Sec. 624.401. Lexington is, however, an eligible surplus lines insurer. By definition, an eligible surplus lines insurer is "an unauthorized

1

insurer which has been made eligible by the [Office of Insurance Regulation] to issue insurance coverage under [the] Surplus Lines Law." Fla. Stat. Sec. 626.914(2). Florida's Surplus Lines Law is contained in Florida Statutes Section 626.913 – 626.937, and governs the operations and conduct of surplus lines insurers.

Lexington will argue that most of the statutes on which the Court requested further briefing do not apply to it pursuant to Section 626.912 (4), which at first glance appears to exempt contracts of insurance "issued under and in accordance with the Surplus Lines Law" from the provisions of Section 626.904 through 626.911. Fla. Stat. Sec. 626.912 (4). As discussed below, Prescott's position is that the 2005 Policy was not issued "in accordance with" the Surplus Lines Law, and that even if it was, Lexington has not allowed the Court to have "complete jurisdiction" over it such that it would be exempted from the unauthorized insurer statutes.

### I. The McCarran-Ferguson Act Precludes Application of the Federal Arbitration Act to this Dispute

The McCarran-Ferguson Act sets forth the determination of Congress that regulation of insurance is exclusively the responsibility of the individual states, absent very specific circumstances. See 15 USC § 1012 (a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.") To carry out this determination, the Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, [. . .] unless such Act specifically relates to the business of insurance." 15 USC § 1012 (b). In the Eleventh Circuit, a three-prong test is used to determine whether the McCarran-Ferguson Act applies in any particular situation: (i) whether the federal law relates specifically to the insurance business to bar the application of a state statute; (ii) whether the

2

state statute was specifically enacted to regulate the insurance business; and (iii) whether the state statute would be impaired, invalidated, or superseded by application of the federal law. Moore v. Liberty Nat'l Life Ins. Co., 267 F. 3d 1209 (11th Cir. 2001). For purposes of this supplemental briefing, only the third requirement is a concern – the parties appear to agree that the first two requirements are met in this case.

> a. **Section 626.905 sets forth Florida's Intent to Subject Unauthorized Insurers to Florida Courts and not Arbitrators.**

Section 626.905 removes all doubt that the Florida Legislature intended to subject unauthorized insurers such as Lexington to the courts of this state rather than "distant forums" (such as arbitration in Boston, Massachusetts)[1]:

> The purpose of the Unauthorized Insurers Process Law is to subject certain insurers and persons representing or aiding such insurers to the jurisdiction of courts of this state in suits by or on behalf of insureds or beneficiaries under insurance contracts. The Legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in the state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle[2] of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the Legislature herein provides a method of substituted service of process upon unauthorized insurers and persons representing or aiding such insurers, and declares that in so doing it exercises its power to protect its residents and to define,

---

[1] Throughout the lawsuit, Lexington suggests that Prescott agreed to arbitrate in Boston, Massachusetts. The Court should not be mislead by this strained suggestion, as the arbitration provision is contained in a policy of insurance which was not provided to Prescott until well after it had been issued. Moreover, Lexington's argument ignores important procedural and substantive concerns revolving around Lexington's failure to obtain approval of the Office of Insurance Regulation for the policy form issued to Prescott. Pursuant to Section 627.410 (1), Florida Statutes, the policy form was required to be approved. See Essex Ins. Co. v. Zota, 985 So. 2d 1036 (Fla. 2008) and CNL Hotels and Resorts, Inc. v. Twin City Fire Ins. Co., 2008 U.S. App. LEXIS 17686 (11th Cir. August 18, 2008). The policy form in this case was not approved by the Office of Insurance Regulation. As a result, Lexington is not permitted to utilize the unapproved policy provisions. See American Mutual Fire Ins. Co. v. Illingworth, 213 So. 2d 747, 749 (Fla. 1st DCA 1968).

[2] Prescott submits that arbitrating coverage for a claim brought by an AIG subsidiary against a party insured by an AIG subsidiary, in AIG's backyard (Boston, Massachusetts) qualifies as a uniquely "insuperable obstacle."

3

> for the purpose of this chapter, what constitutes doing business in this state, and also exercises powers and privileges available to the state by virtue of Pub. L. No. 15, 79th Congress of the United States, chapter 20, 1st session, s. 340, as amended [the McCarran-Ferguson Act], which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states.

Fla. Stat. Sec. 626.905.

Thus, while specifically referencing the McCarran-Ferguson Act, the Legislature notes its intent – and its requirement – that residents of the State of Florida should not have to travel to "distant forums for the purpose of asserting legal rights" under their insurance policies. Without directly admitting it, Lexington seeks to do just that; to require Prescott to travel to Boston, Massachusetts to assert legal rights under the insurance policy, in violation of Section 626.905.

This statute is more involved than simply providing an alternative method of service of process. First, the statute specifically notes the practical difficulties of residents being forced into distant forums to "assert legal rights." Second, the statute lays the groundwork for other provisions of Chapter 626, which speak clearly in terms of courts of law rather than arbitration forums. These are important in the context of the McCarran-Ferguson analysis because the Federal Arbitration Act, if applied, would require a resident of the State of Florida to resort to the "distant forum" of arbitration in Boston, Massachusetts. Leaving geography aside, arbitration itself may well be a "distant forum" in the eyes of the Legislature given the context of the statute and subsequent sections (dealing with service of process, judgment by default, defense of lawsuits and attorney's fees in court proceedings – arbitration is conspicuously absent).

Should the Federal Arbitration Act be applied in this case, Section 626.905 would be directly impaired and superseded because Prescott would be forced to travel to a distant forum to prosecute its rights under the insurance policy. In this situation, McCarran-Ferguson would prevent the

4

application of the Federal Arbitration Act as a result.

### b. Section 626.907 would be Impaired if the Federal Arbitration Act is applied.

Section 626.907 of the Florida deals with service of process on unauthorized insurers by serving the state's Chief Financial Officer, as well as dealing with the method by which service of suit is verified. No provision is made for arbitration. In fact, the section requires filings with the "clerk of court" to prove service of process.

While the import of this section may seem minimal, the statute would nonetheless be impaired by the Federal Arbitration Act in virtually any arbitration because an insured would be without any ability to "serve" an unauthorized insurer with arbitration demands. Taking the situation as far as it goes, one could envision a situation where an insured was unable to ever compel an insurance company to answer charges without the substituted service requirements of Section 626.907. Lexington has in this case lessened the opportunity for Prescott to be prejudiced but, nonetheless, this statute would – or could – still be impaired should the Federal Arbitration Act be applied.

### c. Application of the Federal Arbitration Act would Invalidate Section 626.908.

This section safeguards insureds in actions (specifically, court proceedings) against unauthorized insurers such as Lexington by requiring insurers obtain a Certificate of Authority as well as post a bond or deposit cash or securities *with the clerk of court* which are sufficient to pay the amount of any final judgment entered against the insurer. Undisputedly, arbitration would not provide these safeguards. The statute uses the word "shall," meaning a court is without discretion to not require such a bond, and that the insurer shall obtain a Certificate of Authority. The statute would be invalidated by the Federal Arbitration Act because the policy's arbitration provision

provides only that the arbitrators "*may* refer to [. . .] relevant legal principles" rather than mandating compliance with this section. Without question, the statute would be impaired.

### d. Section 626.905, 629.907, and 626.908 Apply to Lexington.

Sections 626.905, 626.907 and 626.908 apply to unauthorized insurers. Lexington is an unauthorized insurer operating without a Certificate of Authority. The question then becomes whether Lexington is subject to any exception from the requirements of these sections as provided in Section 626.912. Prescott contends that Lexington failed to comply with the Surplus Lines Law because Lexington and its agent did not satisfy the procedural requirements of Section 626.916, which are a condition precedent to eligibility for export of insurance coverage. Thus, Lexington's policy would not have been issued "in accordance with" the surplus lines law and the exemption found in Section 626.912 would not apply.

Section 626.916 provides that "no insurance shall be eligible for export" to an unauthorized insurer unless several conditions are met. Among those conditions are that diligent search was made to procure coverage from authorized insurers and that premium shall not be lower than that charged by authorized insurers. Prescott has a good faith belief these requirements were not met by Lexington as to either the 2005 Policy or the 2006 Policy. Because the requirements were not met, Sections 626.905, 626.907 and 626.908 would apply to this lawsuit.

### e. Even if Sections 626.905, 626.907 and 626.908 did not apply, Section 626.937 applies and would be invalidated by the Federal Arbitration Act.

Even if Sections 626.905, 626.907 and 626.908 did not apply to Lexington, Section 626.937, which is part of the Surplus Lines Law, would still apply to Lexington. Section 626.937 provides that "[a]n unauthorized insurer may be sued upon any cause of action arising in this state under any surplus lines insurance contract issued by it[.]" Fla. Stat. Sec. 626.937. Thus, Section 626.937

contemplates lawsuits – not arbitration proceedings – against surplus lines insurers.  Moreover, the arbitration provision Lexington seeks to enforce would actually force Prescott to fund half of the arbitrators' expenses, something none of the Florida statutes would require in any court proceeding.

The importance of this section cannot be overstated.  The Florida Supreme Court, acting on certified questions from the Eleventh Circuit, recently decided that surplus lines insurers are required to obtain approval of policy forms from the Office of Insurance Regulation.  See Essex Ins. Co. v. Zota, 985 So. 2d 1036 (Fla. 2008); see also CNL Hotels and Resorts, Inc. v. Twin City Fire Ins. Co., 2008 U.S. App. LEXIS 17686 (11th Cir. August 18, 2008).   In Essex, the Florida Supreme Court addressed a series of certified questions from the Eleventh Circuit, and as part of its analysis it confirmed that surplus lines insurers had to obtain approval of policy forms prior to issuance.  The Eleventh Circuit in CNL adopted the Florida Supreme Court's holding, and noted that policy forms not approved were void (thus creating a coverage by estoppel claim).  CNL, 2008 U.S. App. LEXIS 17686 at *11-*12; see also American Mutual Fire Ins. Co. v. Illingworth, 213 So. 2d 747, 749 (Fla. 1st DCA 1968) (failure to file a policy form for approval renders the provision null and void).  These decisions highlight the importance and persuasive value of United Ins. Co. of Am. v. Office of Ins. Regulation, 985 So. 2d 665 (Fla. 1st DCA 2008), where the court affirmed the Office of Insurance Regulation's denial of a policy form containing an arbitration clause.  This decision of a Florida court tasked with judicial review of administrative decisions, coupled with the Eleventh Circuit's decision in CNL, is a clear indication that the State of Florida in fact *disfavors* arbitration of insurance disputes.

In light of the foregoing, application of the Federal Arbitration Act to divest the Court of jurisdiction in this matter would invalidate, impair and supersede Section 626.937 of the Florida

7

Statutes, regardless of the applicability of Sections 626.905, 626.907 and 626.908. This is true because Section 626.937 explicitly provides a right of action *in court* against an unauthorized insurer and, pursuant to Essex and CNL, Lexington could not rely on *any* coverage defenses contained in its unapproved policy form.[3] In arbitration, however, the arbitrators would not be bound by these explicit matters of law. See e.g. Policy Sec. V.O (the arbitration panel "may refer to, but [is] not limited to, relevant legal principles"). This is not a situation where there is a question of how an arbitrator might interpret ambiguous terms in a policy (see Pacificare Health Systems, Inc. v. Book, 538 U.S. 401 (2003)); instead, this is a situation where the mere fact of arbitrating, and therefore challenging coverage presumably on some policy grounds, will *without question* result in the invalidity and impairment of Section 627.937 because any policy provisions which were not approved simply cannot be enforced.

### f. Reliance on Section 627.428 is Withdrawn by Prescott

Prescott strongly believes that arbitration of this dispute is improper. Even so, should the Court compel arbitration of certain claims, Prescott does not intend to submit the issue of attorney's fees to the arbitration panel and instead will seek an award of fees from the Court at the time of confirming the award. As such, Prescott does not believe it is appropriate to continue to rely on Section 627.428 of the Florida Statutes in this case as grounds for the application of the McCarran-Ferguson Act's reverse preemption requirement.

### CONCLUSION

Prescott contends that Sections 626.905, 626.907 and 626.908 apply to this dispute because

---

[3] Under the same token, Lexington should specifically be barred from compelling arbitration since the policy form was never approved by the Office of Insurance Regulation (and probably never would have been approved based on the OIR's argument in United Insurance. See Fla. Stat. Sec. 627.410 (1); CNL, 2008 U.S. App. LEXIS 17686 at *11-*12; see also American Mutual Fire Ins. Co. v. Illingworth, 213 So. 2d 747, 749 (Fla. 1st DCA 1968).

8

Lexington is an unauthorized insurer which failed to comply with the surplus lines law.  Even if Lexington complied with the surplus lines law, Section 626.937 would still apply to this lawsuit and would be impaired and invalidated by the application of the Federal Arbitration Act.  The import of these statutes is that Prescott is entitled to have its dispute heard in court in accordance with the intent of the legislature.  Moreover, Lexington is unable to enforce its policy provisions relating to arbitration (or any coverage defense) because it failed to have its policy form approved.  Section 626.937 is intended to provide access to the Court to hear and decide these issues, rather than any distant arbitration forum.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered via CME/ECF system to Mr. Robert Scott Newman, Marlow Connell et al., 4000 Ponce de Leon Boulevard, Suite 570, Coral Gables, Florida 33146 this 3rd day of April, 2009.

      /s/ Jonathan T. Holloway
Jonathan T. Holloway
Florida Bar No. 627763
Holloway Law Firm, P.A.
369 N. Main Street
Crestview, Florida 32536
Telephone (850) 398-6808
Facsimile (850) 398-6809

Attorney for Prescott Architects, Inc. and Jeffrey Prescott