## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**PRESCOTT ARCHITECTS, INC.**
**and JEFFREY PRESCOTT,**

      **Plaintiffs,**

**v.**                                      **Case No.: 3:08cv532/MCR/EMT**

**LEXINGTON INSURANCE**
**COMPANY,**

      **Defendant.**

_____/

## O R D E R

Before the court are Defendant Lexington Insurance Company's ("Lexington") Motion to Compel Arbitration (doc. 14) and Plaintiffs Prescott Architects, Inc. and Jeffrey Prescott's ("Prescott") Motion to Stay Arbitration (doc. 18).   The motions have been thoroughly briefed and supplemented by oral argument.  After careful consideration of the issues presented, the court concludes the parties' dispute is subject to arbitration as per their agreement.

### Background

Defendant Jeffrey Prescott is the principal member of Prescott Architects, Inc., an architectural design firm in Destin, Florida.   Lexington is an insurance company incorporated under Delaware law with administrative offices in Boston, Massachusetts.  On October 3, 2006, Prescott was named as a third-party defendant in a suit filed in Walton County, Florida.[1]   Prescott was insured at the time under an "Architects & Engineers Professional Liability Policy" ("the policy") issued by Lexington on November 6, 2005.  The

---

[1] *Fairfield Resorts, Inc. v. Florida Condos I Limited Partnership*, Case No. 04-CA-192.  According to Prescott, the suit resulted from a long-standing dispute between Prescott and a developer who alleged Prescott had been negligent in providing design and construction administration services.

policy extended coverage from that date until November 6, 2006.  On December 19, 2006, Prescott submitted a claim to Lexington for coverage on the claims in the Walton county lawsuit. Lexington disputed coverage, maintaining Prescott had failed to file its claim within the policy's coverage period.[2]  On September 25, 2008, Lexington filed a demand for arbitration, seeking a determination of "whether, under a 'claims-made' policy, the claim . . . was 'first made' during the policy period."[3]  (Prescott's Motion to Stay Arbitration at Ex. A).  Lexington based its demand on an arbitration clause in the policy, which states:

> [I]n the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators, consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.
> . . . .
> The arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.  (Policy § V.O.)

After receiving the arbitration demand, Prescott  filed suit against Lexington in Okaloosa County, Florida seeking, among other things, declaratory judgment to determine coverage under the policy.  Lexington removed the case to this court on November 26, 2008, and filed its Motion to Compel Arbitration on January 13, 2009, pursuant to the Federal

---

[2]  Neither the claim nor Lexington's response are part of the record, which provides little information about the events giving rise to the arbitration at issue in this case.  Apparently, Prescott was covered by another Architects & Engineers Professional Liability Policy in effect from November 6, 2006 to November 6, 2007.  The second policy is not part of the record before the court.  (Prescott's Motion to Stay Arbitration at Ex. C).  The court assumes Prescott's claim was one for defense and indemnity by Lexington.

[3]  A "claims-made" policy triggers coverage "if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term." *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512, 514 (Fla. 1983) (citation omitted).  The declarations page of Prescott's policy with Lexington states: "Subject to the terms and conditions of the Policy, this insurance applies only to those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD." Section V.B. of the policy further states Prescott "must give written notice to the Company of any such possible claim as soon as practicable but not later than the end of the policy period."

Arbitration Act ("FAA").  *See* 9 U.S.C. § 1 *et seq.*  Prescott responded on January 26, 2009, with its Motion to Stay Arbitration.

## DISCUSSION

The FAA provides that an arbitration clause in a contract involving "commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id*. at § 2.  Congress enacted the FAA to counter the common law's hostility to arbitration and "to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).  To that end, the statute involves Congress' broadest Commerce Clause power and requires only a transaction involving interstate commerce to enforce a valid arbitration provision.  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (quotation omitted).  Insurers conducting business across state lines engage in interstate commerce.  *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 552-53, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944).[4]

Lexington contends the FAA requires arbitration of the parties' coverage dispute in this case because federal law favors arbitration.  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The FAA gives arbitration agreements the same effect as other contracts, and courts apply the law of the state where the arbitration agreement was entered to determine the contract's validity.  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005).  Prescott executed the insurance policy in Florida, and under Florida law an arbitration clause is enforceable where (1) a valid written arbitration agreement exists, (2) an arbitrable issue is involved, and (3) the right to arbitrate has not been waived.  *Hospicecare of Southeast Fla., Inc. v. Major*, 968 So.2d 117, 118 (Fla. 4th DCA 2007).

---

[4]  Prescott, which remits policy premiums to Atlanta, Georgia and submits claims to Lexington's administrative office in Boston, Massachusetts, does not dispute the existence of an interstate transaction in this case.

Prescott argues that arbitration is precluded in this case by (1) Florida common law prohibiting the arbitration of coverage disputes and (2) the McCarran-Ferguson Act ("MFA").  15 U.S.C. § 1012.  The MFA provides that "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." *Id*. at § 1012(b).  By barring the preemptive power of certain federal statutes, the MFA "inversely preempts" federal law and makes it inapplicable to state insurance law when (1) the federal statute is not specifically related to the insurance business, (2) the state statute at issue was enacted to regulate insurance, and (3) application of the federal statute would "invalidate, impair, or supersede" the state statute.[5] *Moore v. Liberty Nat. Life Ins. Co*., 267 F.3d 1209, 1220 (11th Cir. 2001).  Prescott argues four provisions of the Florida Insurance Code would be impaired if the court enforces the parties' arbitration agreement:   Sections 626.905, 626.907, 626.908, and 626.937. Sections 626.905, 626.907, and 626.908 are part of the Unauthorized Insurers Process Law ("UIPL") and provide methods of substituted service on unauthorized insurers.[6]  They also outline the procedures such companies must follow when sued under the UIPL.[7]

---

[5]  The Supreme Court has carefully defined the key terms "invalidate, impair, or supercede" under the MFA.  "Invalidate" means "to render ineffective, generally without providing a replacement rule or law;" "supercede" means "to displace (and thus render ineffective) while providing a substitute rule;" and "impair" means to "weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner."  *Humana Inc. v. Forsyth*, 525 U.S. 299, 307, 309-10, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) (citations omitted).

[6]  The UIPL is a long-arm statute designed to subject out-of-state insurers unauthorized to do business in Florida to the jurisdiction of Florida courts.  *See Walter v. Blue Cross & Blue Shield United of Wisconsin*, 181 F.3d 1198, 1203 (11th Cir. 1999).  Section 624.401 of the Florida Insurance Code requires an insurer to be authorized by the Department of Insurance to conduct business in Florida. Coverage, however, can be obtained from unauthorized insurers under certain conditions, including when the kind of coverage sought is not available from an in-state authorized insurer.  *See L.B. Bryan & Co. v. School Bd. of Broward County*, 746 So.2d 1194, 1195 (Fla. 1st DCA 1999).

[7]  Section 626.905 states, in relevant part, the purpose of the UIPL is to provide a method of substituted service on unauthorized insurers to prevent Florida residents holding policies issued by such companies from traveling to "distant forums for the purpose of asserting legal rights."

Section 626.907 provides the method of serving process on unauthorized insurers and states: "Service of process . . . shall be made by delivering to and leaving with the Chief Financial Officer . . . two

Section 626.937 is part of the Surplus Lines Law and provides methods of service when a surplus-lines insurer is sued.[8]  Prescott claims these statutes grant it substantive rights, including the right to file suit against Lexington; the FAA would impair these rights; and the MFA therefore inversely preempts the FAA.[9]

Prescott first argues that Florida common law precludes enforcement of the parties' arbitration clause.  The court disagrees.  Concededly , Florida courts have long interpreted a range of coverage disputes as matters for courts, not arbitration or appraisal panels, to decide.  *See*, *e.g.*, *Midwest Mut. Ins. Co. v. Santiesteban*, 287 So.2d 665,  667 (Fla. 1973) (finding that coverage under an automobile policy is "exclusively a [j]udicial question and may not be decided by arbitration."); *Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021, 1025 (Fla. 2002) ("Whether [a] claim is covered by [a property insurance] policy is a judicial question, not a question for the appraisers."); *Corzo v. Am. Superior Ins. Co.*, 847 So.2d 584, 585 (Fla. 3d DCA 2003); *Gonzalez v. State Farm Fire and Cas. Co.*, 805 So.2d 814,

---

copies thereof.  The Chief Financial Officer shall . . . mail one of the copies . . . to the defendant at the defendant's last known principal place of business." Fla. Stat. § 626.907(1).  The statute also allows service of process "in any other manner now or hereafter permitted by law." Fla. Stat. § 626.907(4).

Section 626.908 requires an unauthorized insurer to obtain a certificate of authority to transact insurance in Florida or to deposit a bond with the clerk of court before the insurer files any pleading in an action instituted against it under the UIPL.  Fla. Stat. § 626.908(1)(a)-(b).

Prescott originally argued that application of the FAA would invalidate Fla. Stat. § 627.428, which requires a court to award attorney's fees to an insured who prevails in a suit against an insurer, but has since withdrawn its reliance on that statute.  (Prescott's Supplemental Motion at 8).

[8]  Surplus-lines insurance is a type of insurance available when a general-lines policy does not cover the risk being insured.  Fla. Stat. § 626.916(1)(a).  Unauthorized out-of-state insurers provide such coverage through in-state "surplus lines agents," who serve as middlemen between the insurer and general-lines agents.  *See Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1040 n.2 (Fla. 2008).

Section 626.937 states that an unauthorized insurer "may be sued upon any cause of action arising . . . under any surplus lines insurance contract issued by it . . . pursuant to the same procedure as is provided in [§] 624.423 as to authorized insurers."

[9]  The parties concede the FAA is not related to the business of insurance and that the statutes Prescott relies on regulate the Florida insurance industry.  Their dispute centers on the MFA's third prong of whether the FAA invalidates, impairs, or supercedes Fla. Stat. §§ 626.905, 626.907, 626.908, or 626.937.

817 (Fla. 3d DCA 2000).[10]  Nevertheless, Prescott's reliance on these cases is misplaced because they do not involve an interstate nexus and, as a result, do not implicate the FAA. Where the FAA applies, the Supreme Court has made clear that state law, "whether of legislative or judicial origin," escapes the FAA's preemption only if the state law is designed to govern "the validity, revocability, and enforceability of contracts generally."  *Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).  The Florida case law Prescott cites does not establish general rules of contract law; it addresses the narrower issue of enforcing arbitration clauses when an insurer disputes coverage.  *Perry* specifically includes such judicially-created arbitration rules within the FAA's preemptive scope.  *See id.* (stating that a "state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue" is not exempt from the FAA); *see also Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) ("Generally, a court should enforce an arbitration agreement [governed by the FAA] according to its terms, and no exception exists for a cause of action founded on statutory rights.").  Contrary to Prescott's claim, Florida courts, and federal courts interpreting Florida law, have frequently enforced the arbitration of coverage disputes when the FAA applies to an insurance policy.  *See*, *e.g.*, *American Int'l Group, Inc. v. Siemens Buildings Technologies, Inc.*, 881 So.2d 7 (Fla. 3d DCA 2004) (enforcing an arbitration clause covering "all disputes and differences" between the parties); *Kong v. Allied Professionals Ins. Co.*, No. 8:07-cv-2142-T-17, 2008 WL 2853677 (M.D. Fla. July 22, 2008); *Mayard-Paul v. The Mega Life & Health Ins. Co.*, No. 01-cv-3488, 2001 WL 1711519 (S.D. Fla. Dec. 21, 2001).[11]  Indeed, coverage

---

[10]  In *Johnson*, the Florida Supreme Court relied on *Santiesteban* and made no distinction between arbitration and appraisal clauses when coverage is at issue.  *See Johnson*, 828 So.2d at 1025.  Although appraisal clauses can be worded in ways that distinguish them from arbitration agreements, *Allstate Ins. Co. v. Suarez*, 833 So.2d 762, 765-67 (Fla. 2002), Florida courts have rejected the idea that *Suarez* signaled a change in Florida law. *See Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F.Supp.2d 1357, 1362 n.4 (M.D. Fla. 2003).  As *Three Palms Pointe* noted, Florida courts have repeatedly used Fla. Stat. § 682.03, governing arbitration, to compel appraisals, and courts generally treat appraisal clauses as "narrowly restricted" arbitration provisions.  *Id.* at 1362.

[11]  At oral argument, Prescott claimed in general terms that the MFA inversely preempts Florida's common law rule forbidding the arbitration of coverage issues.  Transcript at 24-25.  However, the MFA's plain language applies the statute's preemption protection only to a "law enacted by any State for the purpose of

issues have been referred to arbitration even in the absence of an interstate nexus and a FAA arbitration clause.[12]  *See Thomas v. United Wisconsin Life Ins. Co.*, 348 F.Supp.2d 1320 (M.D. Fla. 2004).

The Court also disagrees with Prescott's second argument that compelling arbitration would "invalidate, impair, or supercede" provisions of the UIPL and Surplus Lines Law in violation of the MFA.  As stated earlier, Prescott argues that §§ 626.905, 626.907, and 626.908 of the UIPL –  which establish requirements for serving process on unauthorized insurers and  actions such insurers must take before responding to a lawsuit – provide a substantive right to file suit against an unauthorized insurer like Lexington. Unauthorized insurers who issue policies under Florida's Surplus Lines Law are exempt from the three UIPL statutes Prescott cites, however. *See* Fla. Stat. § 626.912(4).  Prescott admits Lexington is an eligible surplus-lines insurer, (Prescott's Supplemental Brief at 1), and it is undisputed that the policy itself was intended to provide surplus-lines coverage: the policy's declaration page states "[t]his insurance is issued pursuant to the Florida Surplus Lines Laws" and lists Daniel De La Rosa as the Surplus Lines Agent as required

---

regulating the business of insurance."  15 U.S.C. § 1012(b).  Common law decisions are not laws "enacted" by the state and fall outside the MFA's scope.  Congress stated its aim in passing the MFA was to ensure "the continued regulation and taxation by the several States of the business of insurance."  15 U.S.C. § 1011.  The power to regulate the insurance industry in Florida belongs to the legislature.  *See Glendale Fed. Sav. and Loan Ass'n v. State of Florida*,587 So.2d 534, 536 n.1 (Fla. 1st DCA 1991).  The Florida legislature has not adopted any statute, rule, or policy prohibiting the arbitration of coverage issues. Unlike the Employee Retirement Income Security Act, which provides an expansive definition of "state law" that includes state common law, *see Unum Life Ins. Co. of America v. Ward,* 526 U.S. 358, 367 n.1, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), neither the MFA nor the caselaw interpreting it has broadened the meaning of "state law" in such a way.

[12]   Prescott also argued at oral argument and in its Motion to Stay Arbitration that Lexington is judicially estopped from demanding arbitration because in a prior case Lexington sought a line-item appraisal award, which allows a court to identify coverage issues that arise during the appraisal process. According to Prescott, Lexington has conceded coverage issues are matters for courts, not arbitrators, to decide. Evidentiary transcript at 4-6 (citing *Bonafonte v. Lexington Insurance*, No. 08-21062-CIV, 2008 WL 2705437 (S.D. Fla. July 9, 2008)).  The court disagrees.  Judicial estoppel is a flexible doctrine applicable when a party (1) takes an inconsistent position under oath in a prior proceeding and (2) such inconsistency is designed "to make a mockery of the judicial system." *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006).  Neither of these criteria applies here.  This court does not know what contractual language was at stake in *Bonafonte* or how it may differ from Prescott's arbitration clause.  No evidence supports the claim that Lexington is taking an inconsistent position in this case or is not arguing in good faith.

by § 626.915(3).  (Lexington's Motion to Compel Arbitration at Ex. A).  Despite these indicators, Prescott nonetheless alleges for the first time in its Supplemental Brief that Prescott has a "good faith belief" its policy with Lexington is not valid because Lexington failed to satisfy § 626.916, which requires, in relevant part, that in order for an out-of-state insurance policy to be eligible for export to Florida, the producing agent of a surplus-lines insurer must make a diligent effort to ensure (1) a similar policy cannot be obtained from an authorized Florida insurer and (2) the out-of-state insurer's premiums are not lower than rates charged by similar in-state insurers.[13]  Fla. Stat. § 626.916(a)-(b).  Prescott fails to allege any facts in its state court complaint, Motion to Stay Arbitration, or Supplemental Brief to support this claim.  The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value," *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000), and this applies to efforts opposing arbitration.  *See Sam Reisfeld & Son Import Co. v. S.A. Eteco et al.*, 530 F.2d 679, 681 (5th Cir. 1976) (upholding a district court's ruling that conclusory allegations did not defeat arbitration).  At a minimum Prescott must provide record evidence as to who the producing agent was; what specific actions the agent did or did not take to comply with the statute; whether either of the statutory requirements could have been met; or why Prescott accepted a contract clearly stating it was issued as a surplus-lines policy.[14]  It has not done so.

Nor can the court agree with Prescott's claim that § 626.937 of the Surplus Lines Law guarantees it the right to sue a surplus-lines insurer like Lexington in court and that applying the FAA would impair that right.  As noted earlier, § 626.937 states that an

---

[13]  A "producing agent" is distinct from a surplus-lines agent.  The surplus-lines agent, listed as Daniel De La Rosa on Prescott's policy, acts as a middleman between surplus-lines insurers and a producing agent, who obtains surplus-lines policies.  *Essex Ins. Co.*, 985 So.2d at 1040 n.2.

[14]  Some circuits have applied the summary judgment standard to motions to compel arbitration.  *See, e.g.*, *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The Eleventh Circuit has not done so, but it has stressed that a party opposing the enforcement of an arbitration clause "bears a heavy burden of proof" based on federal policy favoring arbitration.  *Stone v. E.F. Hutton & Co. Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990); *see also Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982).

unauthorized insurer "may be sued upon any cause of action arising . . . under any surplus lines insurance contract issued by it . . . pursuant to the same procedure as is provided in [§] 624.423 as to authorized insurers."[15]    Fla. Stat. § 626.937(a).    Section 626.937 addresses the means for providing notice of a suit otherwise permitted under Florida law, but it does not establish causes of action or grant a substantive right to file suit.    The statute contains five subsections, each of which deals exclusively with service of process; no part of the statute refers to substantive rights, liabilities, or remedies.  Prescott's reliance on *United Ins. Co. of America v. Office of Ins. Regulation*, 985 So.2d 665 (Fla. 1st DCA 2008) to argue it has a statutory right to sue Lexington in court is misplaced.[16]   In that case, the court refused to apply the FAA to Fla. Stat. § 624.155, which provides remedies for a policyholder injured by an insurance company's violation of certain statutory rights, the refusal to promptly settle claims, or a failure to attempt to settle claims in good faith, *id*. at 668, all of which involve substantive rights that arise only after coverage has been established.  Obviously, applying the FAA to such rights would impair Florida's insurance law because § 624.155 regulates the relationship between insurers and policyholders.   By contrast, § 626.937 is procedural in nature and is not impaired or superceded by Prescott's agreement to arbitrate issues involving the interpretation of its contract with Lexington. The court further notes that if the FAA invalidated § 626.937, concerning unauthorized insurers,

---

[15]  Fla. Stat. § 624.423(1) provides for service of process on an authorized insurance company's chief financial officer or assistants.

[16]   Prescott also cites this case to argue the arbitration agreement is unenforceable because Lexington did not seek approval of its policy from the Office of Insurance Regulation. (Prescott's Supplemental Brief at 6-8).  Prescott does not specify what portion of its policy Lexington should have submitted to the Office of Insurance Regulation, but § 627.410(1) requires a surplus-lines insurer to receive approval for specific kinds of policies and clauses. *See Essex Ins. Co.*, 985 So.2d at 1041-43.  Prescott's claim Lexington failed to comply with § 627.410(1) is conclusory and unsupported by affidavit or other evidence.  Section 627.410(1) only applies to a "basic insurance policy" and excludes "policies . . . of unique character which are designed for and used with relation to insurance upon a particular subject (other than as to health insurance) . . . ." Prescott provides no authority or argument why its Architects & Engineers Professional Liability Policy falls within the statute's scope.  In addition to the heavy burden of proof Prescott bears in opposing arbitration, *Stone*, 898 F.2d at 1543, the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24.

it would also invalidate § 624.423, *supra* note 15, because § 626.937 specifically incorporates § 624.423's means for serving process on authorized insurers.  The result would be to bar the arbitration of all disputes arising under policies issued by surplus-lines insurers and authorized insurers alike.  This is not the case under Florida law, and Prescott cites no authority to the contrary.

        **Conclusion**

        The court finds the parties in this case have a valid arbitration agreement under the insurance policy, an arbitrable issue is involved, and neither party has waived the right to arbitrate the coverage dispute.  The court further finds the policy between Lexington and Prescott involves interstate commerce, and the FAA requires enforcement of the policy's arbitration clause. Accordingly, it is hereby ORDERED:

        1.      Defendant Lexington's Motion to Compel Arbitration (doc. 14) is GRANTED;

        2.      Plaintiff Prescott's Motion to Stay Arbitration (doc. 18) is DENIED;

        3.      The parties shall immediately engage in arbitration on the issue stated in Lexington's September 25, 2008 arbitration demand;

        4.      This case is DISMISSED WITHOUT PREJUDICE;[17]

        5.      The Clerk is ordered to administratively CLOSE this case.

        **DONE AND ORDERED** on this 1st day of July, 2009.


                        s/ *M. Casey Rodgers*
                        **M. CASEY RODGERS**
                        **UNITED STATES DISTRICT JUDGE**

---

        [17]   Prescott did not object to Lexington's request for dismissal.  Moreover, the parties have not filed the stipulation Lexington refers to in its Supplemental Brief, by which they apparently agreed to ask the court to stay Prescott's bad faith claim. Although not before the court, the court notes that Prescott's bad faith claim is premature at this stage. *See Wachovia Ins. Serv., Inc. v. Toomey*, 994 So.2d 980, 989 (Fla. 2008) (holding that a bad faith claim accrues under Florida law only when an insurer breaches its duty to defend, and the insured is exposed to an excess judgment).